**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**


TONY L. HARMON,

                Petitioner,             :     Case No. 2:21-cv-2745

    - vs -                            District Judge Michael H. Watson
                                      Magistrate Judge Michael R. Merz


WARDEN,
  Lebanon Correctional Institution,


                               :
                Respondent.

---

## REPORT AND RECOMMENDATIONS

---

      This habeas corpus case, brought *pro se* by Petitioner Tony Harmon under 28 U.S.C. § 2254, is before the Court for decision on the merits. The relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 4), and Respondent's Answer/Return of Writ (ECF No. 5). The Court set a date for Petitioner to file a reply/traverse of twenty-one days after the Return was filed (Order, ECF No. 2, PageID 25). That time expired August 16, 2021[1], but Petitioner has filed no reply.

      The Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in this judicial district.

---

[1] Twenty-one days from July 22, 2021, plus three days because Petitioner was served with the Return by mail.

**Litigation History**

On September 9, 2017, the Franklin County Grand Jury indicted Petitioner on one count of attempted murder in violation of Ohio Revised Code § 2923.02/2903.02 (Count 1); one count of felonious assault in violation of Ohio Revised Code § 2903.11 (Count 2); and one count of kidnapping in violation of Ohio Revised Code § 2905.01 (Count Three).  Each count carried a specification that Harmon was a repeat violent offender (Indictment, State Court Record, ECF No. 4, Ex. 1).

The case was tried to a jury and both Harmon and the victim testified.  On September 28, 2018, the jury found Harmon guilty on all counts and specifications.  The trial court then merged the attempted murder and felonious assault counts under Ohio Revised Code § 2941.25 and sentenced Harmon to eleven years in prison for attempted murder; three years in prison for kidnapping; and two years in prison as a repeat violent offender. All sentences were to be served consecutively for an aggregate prison term of 16 years. (Sentencing Entry, Case No. 17CR-4910, Exhibit 7, ECF No. 4, PageID 60).

Through new counsel, Harmon appealed, but the conviction was affirmed.  *State v. Harmon*, 2020-Ohio-590 (Ohio App. 10th Dist. Feb. 20, 2020), appellate jurisdiction declined, 158 Ohio St. 3d 1523, 2020-Ohio-3018, 145 N.E.3d 316 (2020).

Petitioner pleads the following grounds for habeas corpus relief:

> **Ground One**: The verdicts were not supported by sufficient evidence. Mr. Harmon's protected rights of due process and equal protection were violated Fifth and Fourth Amendment. U.S.C. (sic).
>
> **Supporting Facts:** Harmon demonstrated by the preponderance of the evidence that his actions were made in self-defense. That is, he showed at trial that the victim arrived at Harmon's apartment unannounced and started threatening Harmon about not having the money owed. Harmon demonstrated that the victim is known to carry a gun on his person. The victim has a reputation as understood by Harmon to use a gun when people don't pay the money owed. Harmon witnessed the victim reach for what he believed to be a gun.

Harmon used only the force which was necessary to repel the threat. The State convicted Harmon on insufficient evidence to sustain a conviction of attempted murder and repeat violent offender specification. As self-defense negates a criminal conviction as it is a affirmative defense, yet the State denied Harmon the equal protection treatment of R.C. 2901.05

**Ground Two**: Ineffective assistance of counsel. Mr. Harmon's Sixth Amendment right to have the assistance of counsel for his defense was violated.

**Supporting Facts:** Counsel was ineffective because he could not have been paying attention throughout the whole testimony of Lavandon Smith.

Bryan Potts, defense counsel let the witness mention Mr. Harmon's prior incarceration five consecutive times before Richard Schanz, the prosecutor stopped it. No competent attorney would have needed the prosecutor to slow the things down so he could remember to object. We know it is legitimate trial strategy not to draw more attention to testimony with a curative instruction, but it cannot be believed that this was strategic. The court asked counsel, "Do you want me to tell the jury that we're specifically striking that (any reference to prison) and that they are to disregard it." Mr. Potts stated yes. At this point the mentioning of jail is still allowed. The court, not Mr. Potts offered to strike the entire answer, counsel agreed in an attempt to cure the potential error.

**Ground Three**: Trial court committed plain error when it did not *sua sponte* declare a mistrial after a witness repeatedly mentioned Mr. Harmon's criminal record. Violated Fifth and Sixth Amendment.

(Petition, ECF No. 1, PageID 5-7).

3

# Analysis

**Ground One:  Conviction on Insufficient Evidence**

In his First Ground for Relief, Petitioner asserts he was convicted on insufficient evidence. From the supporting facts recited, it is clear Harmon believes he proved, by a preponderance of the evidence, that he acted in self-defense, thus preventing a conviction for attempted murder.[2]

Harmon's sufficiency of the evidence claim on direct appeal referred only to the kidnapping conviction. *State v. Harmon, supra,* at ¶¶'s 29-33.  Harmon presented his self-defense argument to the Tenth District as a claim that his attempted murder conviction was against the manifest weight of the evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  On the other hand, a claim that a verdict is against the manifest weight of the evidence does not present a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Supreme Court of Ohio reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the manifest weight of the evidence.    It held:

> In essence, sufficiency is a test of adequacy.  Whether the evidence
> is legally sufficient to sustain a verdict is a question of law. *State v.*

---

[2] Harmon also pleads there was insufficient evidence to convict him of being a repeat violent offender.  However, his own admission about his prior convictions for attempted involuntary manslaughter and attempted aggravated robbery are certainly sufficient under Ohio Revised Code § 2929.01(CC).

*Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, (1982), *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost

5

> its way and created such a manifest miscarriage of justice that the
> conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus.

Applying this distinction, the Magistrate Judge concludes Harmon has procedurally

defaulted on his First Ground for Relief because he never claimed in the Tenth District that there

was insufficient evidence to convict of attempted murder, but merely that the manifest weight of

the evidence was against conviction of that count.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must

be "fairly presented" to the state courts in a way which provides them with an opportunity to

remedy the asserted constitutional violation, including presenting both the legal and factual basis

of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d

1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by

*Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir.

1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v.*

*Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

A claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis;
> (2) relied upon state cases employing federal constitutional
> analysis; (3) phrased the claim in terms of constitutional law or
> in terms sufficiently particular to allege a denial of a specific
> constitutional right; or (4) alleged facts well within the
> mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).  Harmon clearly did not present his self-defense

argument as a constitutional claim, but rather as a non-constitutional manifest weight claim.

On the other hand, if Harmon's Third Assignment of Error on direct appeal were to be

treated as fairly presenting the sufficiency of the evidence argument, this Court would be bound

to defer to the Tenth District's ruling unless it was an unreasonable application of clearly established Supreme Court precedent.  A state court finding that a verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence to support the verdict. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

In deciding the Third Assignment of Error, the Tenth District found:

> {¶ 36} Harmon argues the jury's verdicts were against the manifest weight of the evidence because he established he acted in self-defense. Under the law at the relevant time, self-defense is an affirmative defense that requires an accused to prove by a preponderance of the evidence that: (1) he was not at fault in creating the situation that gave rise to the altercation, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was the use of force, and (3) he did not violate any duty to retreat or avoid the danger. *State v. Reynolds*, 10th Dist. No. 18AP-560, 2019-Ohio-2343, ¶ 34. These elements are cumulative and if an accused fails to prove any one of the elements by a preponderance of the evidence, he fails to demonstrate that he acted in self-defense. *Id.* Harmon argues his testimony established all of these elements by a preponderance of the evidence and the jury lost its way in finding him guilty of the charges against him.
>
> {¶ 37} With respect to the third element of self-defense, the evidence was undisputed that the altercation occurred in Harmon's apartment. There is no duty to retreat from one's own home before using force in self-defense. *State v. Shine-Johnson*, 10th Dist. No. 17AP-194, 2018-Ohio-3347, ¶ 11. However, with respect to the other two elements of self-defense, we conclude the jury could reasonably have concluded Harmon failed to establish he was not at fault in creating the situation or had a bona fide belief that he was in imminent danger of death or great bodily harm and could only escape through use of force. Harmon argues he was not at fault for creating the situation giving rise to the altercation, asserting that Smith's history of carrying a handgun and making threatening statements led to the altercation. However, Smith denied threatening

> Harmon and testified Harmon attacked him shortly after he entered the apartment, while Smith was looking down at his phone. Likewise, although Harmon argues he legitimately believed Smith was carrying a gun and charged Smith as he was reaching for it, he admitted at trial that he did not actually see a gun on Smith at the time of the incident. Smith testified he was not carrying his gun when he entered Harmon's apartment on June 23, 2017. The two apartment complex employees who aided Smith after the incident and Officer Callender who responded to the emergency call all testified they did not see any weapons on Smith. The jury was in the best position to determine the credibility of Harmon, Smith, and the other witnesses, and was free to believe or disbelieve any or all of the testimony relating to these issues. *Reynolds* at ¶ 36. Based on the record before us, we cannot conclude the jury clearly lost its way in rejecting Harmon's self-defense claim and concluding he was guilty of the charges against him.

*State v. Harmon, supra.* As the Tenth District found, there was competent evidence from which the jury could reasonably have rejected the self-defense claim.

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the standard for deciding a sufficiency of the evidence claim:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). There was indeed competent evidence from the victim himself to support Harmon's conviction. It is clear from the verdicts that the jury believed Smith and did not believe Harmon. Questions of the credibility of witnesses are for the jury to resolve. Harmon has not persuaded this Court that no reasonable juror could have believed Smith.

Accordingly, Harmon's First Ground for Relief should be dismissed as procedurally defaulted because it was never presented to the Tenth District as a federal constitutional claim.

8

Alternatively it is without merit because the Tenth District's implicit decision that there was

sufficient evidence is not an unreasonable application of *Jackson*.

**Ground Two:  Ineffective Assistance of Trial Counsel:  Failure to Object to Testimony Referring to Harmon's Prior Criminal Conduct**

In his Second Ground for Relief, Harmon complains that his trial attorney did not object to

references to his prior criminal record.  Harmon presented this claim to the Tenth District Court of

Appeals as his Second Assignment of Error and the Court decided it as follows:

> A. Alleged Errors Resulting from References to Harmon's Prior
>    Criminal Record
>
> {¶ 13} Harmon's first two assignments of error relate to statements
> Smith made about Harmon's prior criminal record. On direct
> examination at trial, Smith provided the following description of his
> relationship with Harmon:
>
>> Q: Can you describe your relationship with Mr. Harmon a
>> little bit more in depth?
>>
>> A: Yeah. Well, basically, he has a brother, his name is Eric.
>> Me and him grew up together since we were five. He plays
>> basketball, as well. Basically my mom getting in a
>> relationship with his uncle made us family. Me and Eric
>> was best friends 20 years, until this incident, basically at
>> this point.
>>
>> He was in prison my whole time throughout our friendship,
>> and I would be over at Eric's house, playing video games,
>> things of that nature. He'll get a call from jail to talk to his
>> brother, or I might not come over on a certain weekend - -
>> I'm there every weekend - - because he had to go for a visit
>> to see his brother in prison. So I always knew his brother
>> was in prison. So we never had a relationship to that extent.
>> Recently, when he got out of prison, of course, when you
>> come home you want to be able to enjoy your life. Of
>> course, we're guys, we want to go to the bar, hang out,
>> things of that nature.

(Sept. 26, 2018 Tr. at 87-88.) Harmon's trial counsel objected to Smith's testimony. The trial court then held a conference with counsel outside the hearing of the jury. Harmon's trial counsel moved to strike any references to prison. The prosecutor did not object to the motion. The judge noted that instructing the jury that any reference to prison would be stricken might serve to emphasize the reference to Harmon's time in prison and suggested the entire answer be stricken; Harmon's trial counsel agreed with the suggestion. When the conference ended, the trial court instructed the jury to disregard Smith's entire response.

{¶ 14} Smith made a second reference to Harmon's criminal record in response to a question on cross-examination:

> Q: Now, at the time you - - when did you first meet Mr. Harmon?
>
> A: It would be when he first got out of prison. I would say - -

(Sept. 26, 2018 Tr. at 142.) At that point, the prosecutor objected and the trial court struck Smith's response to the question.

{¶ 15} Harmon subsequently testified on his own behalf; during direct examination Harmon stated he pled guilty to charges of attempted involuntary manslaughter and attempted aggravated robbery when he was younger. No further references to Harmon's criminal record were made during trial.

* * *

{¶ 22} In his second assignment of error Harmon asserts his trial counsel provided ineffective assistance by failing to move for a mistrial or request a curative instruction in response to Smith's references to Harmon's criminal record.

{¶ 23} Harmon must satisfy a two-prong test to prevail on a claim of ineffective assistance of counsel. First, he must demonstrate that his trial counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). Second, he must establish that the deficient performance prejudiced his defense. *Strickland* at 687; *Bradley* at 141-42. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. In considering claims of ineffective

10

assistance of counsel, we indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland* at 689; *Bradley* at 142. "Decisions on trial strategy and tactics are generally afforded a wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 86.

{¶ 24} Harmon argues his trial counsel's failure to request a curative instruction in response to Smith's testimony cannot be considered trial strategy. The record reflects that both times Smith referred to Harmon's criminal record there was an objection to the testimony and the trial court specifically instructed the jury to disregard the statements. Additionally, when counsel and the trial court discussed the final jury instructions to be given at the close of trial, the prosecutor noted that Harmon's criminal record had been mentioned during Smith's direct testimony and suggested Harmon's trial counsel might want a curative instruction. Harmon's trial counsel declined this suggestion and the trial court noted the jury had been instructed to disregard the testimony at the time of the original objections. Harmon appears to argue his trial counsel provided ineffective assistance by failing to request curative instructions that went beyond telling the jury to disregard the statements.

{¶ 25} Although Smith's references to Harmon's criminal record were inadmissible, the jury ultimately became aware of Harmon's record through his own testimony. Under Evid.R. 609(A)(2), evidence that an accused has been convicted of a crime is admissible for purposes of attacking his credibility if the crime was punishable by death or more than one year of imprisonment if the court finds that the probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury. While Harmon argues he was effectively forced to testify because of Smith's references to his prior criminal record, it is clear from the opening statement of Harmon's trial counsel that self-defense would form the crux of Harmon's defense against the charges. Because Harmon and Smith were the only two witnesses to the altercation, Harmon's testimony was necessary to establish his claim of self-defense. In the final jury instructions, the trial court reiterated its prior instruction that the jury was not permitted to consider statements stricken by the court. The court also instructed the jury that testimony related to Harmon's prior convictions could only be considered to judge his credibility and the weight to be given to his testimony.

11

*6 {¶ 26} Because the fact that Harmon had a criminal record would ultimately become known to the jury, Harmon's trial counsel could have reasonably concluded that a more specific curative instruction that went beyond telling the jury to disregard Smith's statements would only serve to draw further attention to Harmon's criminal record. *See, e.g., State v. Crowley*, 2d Dist. No. 2009 CA 65, 2009-Ohio-6689, at ¶ 15 ("Crowley's counsel properly objected to Hopping's testimony regarding Crowley's history of domestic violence against her. Although he did not request a limiting instruction when that testimony was introduced, as discussed above, counsel could have reasonably concluded that a limiting instruction would merely emphasize the prejudicial testimony. Counsel's conduct with respect to Crowley's 'other acts' was not ineffective."). Applying the appropriate standard of broad latitude for determining what constitutes professional judgment, we cannot conclude Harmon's trial counsel performed deficiently by failing to request a more specific curative instruction.

{¶ 27} Harmon also argues his trial counsel was ineffective for failing to move for a mistrial following Smith's comments. As explained above, we presume the jurors were able to follow the trial court's instructions to disregard Smith's statements. Those instructions effectively cured any error arising from Smith's statements in the context of ineffective assistance. *State v. Sullivan*, 10th Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 82. As such, a motion for mistrial by Harmon's counsel would have been futile because the trial court had cured the error and would not have been required to grant the motion. *Id.* Failure to take a futile act cannot form the basis for a claim of ineffective assistance of counsel, nor can such a failure be prejudicial. *Id.* Therefore, we cannot conclude Harmon's trial counsel performed deficiently by failing to move for a mistrial in response to Smith's testimony.

{¶ 28} Accordingly, we overrule Harmon's second assignment of error.

*State v. Harmon, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S.

Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice*.  Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a

13

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

In this case the Tenth District expressly relied on *Strickland*.  It found that Harmon's trial attorney did object to Smith's mention of Harmon's criminal record and the trial judge did give an appropriate curative instruction.  As the Tenth District noted, a curative instruction which expressly told the jury not to consider Harmon's prior record would have called the jury's attention to that very fact.  It was accordingly acceptable trial strategy to leave well enough alone.

Harmon argued to the Tenth District that Smith's testimony about his prior prison time

virtually forced Harmon to testify.  This is a completely unpersuasive argument.  There were only

two eyewitnesses to the confrontation, Smith and Harmon.  There was no conceivable way for

Harmon to establish the affirmative defense of self-defense, on which he had the burden of

production, without testifying himself.  Once he took the stand, his prior felony record was fair

game on cross-examination.  Presumably that is why he volunteered the prior conviction on direct

(See ¶ 15) rather than having it "exposed" on cross-examination.

The Tenth District's decision on this ineffective assistance of trial counsel claim is a

completely reasonable application of *Strickland*.  Harmons' Second Ground for Relief should

therefore be dismissed on the merits.


**Ground Three:  Failure of the Trial Court to Declare a Mistrial *Sua Sponte***


In this Third Ground for Relief, Harmon claims the trial judge violated his rights under the

Fifth and Sixth Amendments when he did not *sua sponte* declare a mistrial after mention of

Harmon's criminal record.

Harmon also raised this claim on direct appeal as his First Assignment of Error and the

Tenth District decided it as follows:

> ¶ 17} We review a trial court's failure to grant a mistrial sua sponte
> under the plain error standard. *State v. Griffin*, 10th Dist. No. 10AP-
> 902, 2011-Ohio-4250, ¶ 13. Plain error exists when an error is plain
> or obvious and affects a substantial right. *Id.* "In order to
> demonstrate plain error, the defendant must show: (1) an error that
> is plain on the record, i.e., a deviation from a legal rule that
> constitutes an obvious defect in the trial proceedings; and (2) that
> such error affected substantial rights, i.e., there was a reasonable
> probability that the error affected the outcome of the trial." *State v.
> Barrie*, 10th Dist. No. 15AP-848, 2016-Ohio-5640, ¶ 32. Appellate
> courts find plain error with the utmost caution, under exceptional
> circumstances to prevent a manifest miscarriage of justice. *Id.*

{¶ 18} "A mistrial should not be ordered in a cause simply because some error has intervened. The error must prejudicially affect the merits of the case and the substantial rights of one or both of the parties." *Tingue v. State*, 90 Ohio St. 368 (1914), paragraph three of the syllabus. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "A trial court may grant a mistrial *sua sponte* when there is manifest necessity for the mistrial or when the ends of public justice would otherwise be defeated." *State v. Johnson*, 10th Dist. No. 08AP-652, 2009-Ohio-3383, ¶ 30.

{¶ 19} The Supreme Court of Ohio has held that a trial court does not abuse its discretion by denying a motion for mistrial based on an isolated reference to a defendant's other criminal acts, when there is an objection to the statement and a curative instruction is given. *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 175 ("In this case * * * the reference to Trimble's prior conviction was a brief and isolated remark that was followed by a curative instruction. The mere mention of Trimble's conviction, without more, did not unfairly prejudice Trimble so as to require a mistrial."); *State v. Garner*, 74 Ohio St.3d 49, 59 (1995) ("In this case, the reference to the defendant's prior arrests was fleeting and was promptly followed by a curative instruction. The trial court did not abuse its discretion in failing to order a mistrial."). This court has similarly found no abuse of discretion in denial of a motion for mistrial when an isolated reference to a defendant's other criminal acts draws an objection that is sustained and followed by a curative instruction. *See State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 21 ("[T]he trial court sustained defense counsel's objection to the improper question [about the circumstances of a prior conviction] before appellant responded and then struck the question from the record. The trial court followed up with a short authoritative instruction to the jury that they could not consider the prosecutor's question 'for any purpose in deciding this case.' "); *State v. Walburg*, 10th Dist. No. 10AP-1087, 2011-Ohio-4762, ¶ 53 ("Because the victim's reference to defendant's criminal occupations was an isolated reference, the trial court immediately sustained defendant's objection, and the court instructed the jury to disregard the question and response, the trial court did not abuse its discretion in denying defendant's motion for a mistrial."). In *Walburg* and *Brown*, this court noted that a jury is presumed to follow a trial court's curative instructions. *Walburg* at ¶ 53; *Brown* at ¶ 21. Thus, where a brief reference to a defendant's other criminal acts is immediately addressed through an objection and curative

16

instruction, a trial court does not abuse its discretion by concluding a mistrial is not warranted.

{¶ 20} Although Harmon's trial counsel did not move for a mistrial, we find this case to be similar to *Trimble*, *Garner*, *Walburg*, and *Brown*. As in those cases, the references to Harmon's criminal history were brief and were immediately addressed through objections from counsel and curative instructions from the trial court. The jury was presumed to follow those curative instructions. Under these circumstances, the brief references to Harmon's criminal record did not prevent him from having a fair trial, and the trial court did not plainly err by failing to *sua sponte* grant a mistrial in response to Smith's statements.

{¶ 21} Accordingly, we overrule Harmon's first assignment of error.

*State v. Harmon, supra.*

While the Tenth District did not expressly rely on any Supreme Court precedent in deciding this claim, its decision is completely consistent with relevant precedent. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991). Thus the Tenth District's conclusion on this claim is neither contrary to nor an objectively unreasonable application of clearly established federal law. Ground Three should be dismissed on the merits.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and

that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should

not be permitted to proceed *in forma pauperis*.


September 8, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #