# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

TONY L. HARMON,

        Petitioner,     :     Case No. 2:21-cv-2745

  - vs -                        District Judge Michael H. Watson
                                     Magistrate Judge Michael R. Merz

WARDEN,
  Lebanon Correctional Institution,

                                   :

        Respondent.

## REPORT AND RECOMMENDATIONS ON MOTION TO AMEND THE JUDGMENT

This habeas corpus case is before the Court on Petitioner's Motion to Alter or Amend the Judgment in this case under Fed.R.Civ.P. 59(e)(ECF No. 17). As a post-judgment motion, it is deemed referred to the Magistrate Judge under 28 U.S.C. § 636(b)(3), requiring a report of findings and a proposed disposition.

The Court entered judgment dismissing the case on October 19, 2021 (ECF No. 11, 12). Petitioner's instant Motion, filed by depositing it in the prison mailing system on November 16, 2021 (ECF No. 17, PageID 794), is therefore timely.

**Standard of Review**

For a district court to grant relief under Rule 59(e), "there must be '(1) a clear error of law;

(2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Betts v. Costco Wholesale Corp.,* 558 F.3d 461, 474 (6th Cir. 2009) (quoting *Henderson v. Walled Lake Consol. Sch.,* 469 F.3d 479, 496 (6th Cir. 2006)).

> Motions to alter or amend judgment may be granted if there is a clear error of law, *see Sault Ste. Marie Tribe,* 146 F.3d at 374, newly discovered evidence, *see id.*, an intervening change in controlling constitutional law, *Collison v. International Chem. Workers Union, Local 217,* 34 F.3d 233, 236 (4th Cir. 1994); *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90-91 n.3 (1st Cir. 1993); *School District No. 1J v. ACANDS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993), or to prevent manifest injustice. *Davis,* 912 F.2d at 133; *Collison,* 34 F.3d at 236; *Hayes,* 8 F.3d at 90-91 n.3. *See also North River Ins. Co. v. Cigna Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995).

*Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999), *accord, Nolfi v. Ohio Ky. Oil Corp.,* 675 F.3d 538, 551-52 (6th Cir. 2011), *quoting Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

**Claim of Procedural Injustice**

Petitioner asserts he should be granted an amendment of the judgment to prevent a manifest injustice, to wit, the refusal the Court to consider his Objections to the Magistrate Judge's Report and Recommendations on the merits ("Report," ECF No. 8).  In support of this claim, he recites the following chronology:

| | |
|---|---|
| September 8, 2021 | Report and Recommendations filed |
| September 24, 2021 | Petitioner's first motion for extension of time to file objections |
| September 25, 2021 | Original due date for objections |
| September 27, 2021 | Order granting extension to October 10, 2021, as requested. |

2

| | |
|---|---|
| October 10, 2021 | Petitioner's second motion for extension of time to file objections |
| October 19, 2021 | Petitioner's Objections filed |

(Motion, ECF No. 17, PageID 789-90).

The Magistrate Judge struck the Objections as untimely (ECF No. 14) and later denied consideration of the late Objections (ECF No. 16) because Petitioner's second motion for extension of time had never been received by the Court[1].

Petitioner's claim is that he has been treated unjustly because the Court has not considered his Objections on the merits. The premises of his claim are that a court is bound to accept a prisoner's declaration of mailing as conclusive proof that the mailing occurred and that a prisoner who has requested an extension of time to make a filing is entitled to assume the extension has been granted. Neither of these premises is correct.

The Supreme Court of the United States has held that an incarcerated person "files" a notice of appeal when he or she deposits it with prison authorities for forwarding to the Clerk. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). The same rule applies to filing a petition for writ of habeas corpus or § 2255 motion to avoid the statute of limitations. *Towns v. United States*, 190 F.3d 468 (6th Cir. 1999).

> [Under this] relaxed filing standard, a *pro se* prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. See *Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam) (extending *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988)). Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint. *See, e.g.*, *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006) (per curiam) ("[W]e treat the petition as filed on the date [the prisoner] signed it."); *Bomer v. Bass*, 76 F. App'x 62, 63 (6th Cir. 2003) (order); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (order).

---

[1] As of the date of this Report (November 29, 2021), it still has not been received.

*Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Note that the holdings of these cases relate to initial filings – complaints or petitions. However, this Court has treated this so-called mailbox rule as applying to all prisoner filings. Furthermore, this Court has generally accepted the uncorroborated representation of the prisoner about the date of deposit as sufficient evidence of that date[2]. However, the Court is under no legal obligation to accept such representations as conclusive proof of deposit any more than it is obliged to accept any uncorroborated representation of any litigant as to a fact. Indeed, accepting the uncorroborated representation of a prisoner litigant relaxes to an extraordinary extent the ordinary requirements for proof of a fact in federal court: witnesses to facts are ordinarily required to testify under oath or affirmation. Fed. R. Evid. 603. In *Houston* itself Justice Brennan assumed the date on which a filing was handed to prison officials was readily ascertainable from a prison log. That is not true in Ohio. *Stein v. Hooks*, 2015 U.S. Dist. LEXIS 25639 (S.D. Ohio Mar. 3, 2015). Harmon claims prison records would support his claim that he mailed a second motion for extension (ECF No. 17, PageID 793), but has produced no such records.

In the past the Court could avoid satellite litigation over dates of mailing by just waiting until a week after the due date for a document to arrive. Since the deterioration of postal service during the previous Administration, that has become a less reliable assumption, but most of Petitioner's filings in this case have been received within a week of their purported mailing. For example, Petitioner's first Motion for extension of time to object was purportedly mailed on September 20, 2021 (ECF No. 9, PageID 765) and received and docketed on September 27, 2021, a week later. His Objections (ECF No. 13) were mailed October 27, 2021 (See postmark at PageID 780) and received and docketed November 1, 2021, with an intervening weekend. Although the

---

[2] Petitioner cites *Lucas v. Mnuchin*, 2021 U.S. Dist. LEXIS 123017 (S.D. Ohio 2021), as supporting this extension. Note, however, that the plaintiff in *Lucas* provided a notarized affidavit of the date of mailing. See *Id.* at n. 1.

Objections contained no declaration of mailing, Harmon included in his Request to Consider Objections a declaration that they were mailed October 25, 2021, again exactly a week before they were received and docketed.

Petitioner's second Motion for extension, however, was allegedly[3] mailed on October 10, 2021, but has never been received. In claiming manifest injustice, Petitioner states he assumed the second extension had been granted, but on what basis could he legitimately make that assumption? The time for making objections in the first instance is set by the Supreme Court in Fed.R.Civ.P. 72(b)(fourteen days plus three days because of service by mail under Fed.R.Civ.P. 6). This Court routinely grants short extensions of time to object such as those requested here, but litigants who wait until the last minute to ask for an extension are certainly not entitled to act as if the Court had already and always would exercise its discretion to grant what is requested.

Petitioner claims his declarations of mailing must be presumed to have been made in good faith (ECF No. 17, PageID 792, citing *Caretolive v. United States FDA*, 2009 U.S. Dist. LEXIS 53360 * 7 (S.D. Ohio 2009)(Frost, D.J.). *Caretolive* was a Freedom of Information Act case and what Judge Frost actually wrote was that declarations of a federal agency in FOIA litigation must be accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents" citing *SafeCard Services v. SEC*, 926 F.2d 1197, 1200, 288 U.S. App. D.C. 324 (D.C. Cir. 1991). According Petitioner equal respect with federal agencies, the Court presumes his declaration of mailing the second motion for extension on October 10, 2021, is made in good faith. But that does not mean it must be accepted as true. When the Court decided not to consider the untimely Objections, it had before it the

---

[3] Because the document has never been received, the Court cannot tell from the document when Petitioner claims to have deposited it. Petitioner declares in his instant Motion that he deposited it with the prison authorities on October 10, 2021 (ECF No. 17, PageID 791). Petitioner has included a standard declaration under penalty of perjury at the end of the instant Motion. *Id.* at PageID 793.

following uncontrovertible facts: (1) it had set an extended date for objections of October 10, 2021, a date the Petitioner had requested; (2) no request to further extend that time had ever been received by the Court; (3) the Objections were not in fact mailed until nine days after that due date and not received until thirteen days after judgment had been entered.

Given those facts, Harmon has not demonstrated that the judgment works a manifest injustice on him by applying to him the same procedure that applies to all imprisoned litigants.

**Substantive Claims**

Even if the Court were to accept Harmon's claims of a manifest procedural injustice, it ought not to reopen the judgment because Harmon's Objections are without substantive merit.

The trial testimony was summarized by the Ohio Tenth District Court of Appeals in its decision affirming Harmon's conviction:

> {¶ 2} Harmon was indicted in September 2017 on charges of attempted murder, felonious assault, and kidnapping, with a repeat violent offender specification on each charge. The charges arose from an incident that occurred at Harmon's apartment on June 23, 2017, between Harmon and Lavandon A. Smith. A jury trial was conducted on the charges in September 2018.
>
> {¶ 3} At trial, Smith testified he knew Harmon through Harmon's brother, whom Smith had been friends with since childhood. Smith would occasionally socialize with Harmon, hanging out, playing video games, and going to bars together. A month or two prior to the incident, Smith loaned $400 to Harmon so he could pay rent. On cross-examination, Smith denied selling drugs and denied giving Harmon drugs to sell as part of the loan. Smith testified he loaned the money to Harmon on a Tuesday and expected to be repaid on Friday of the same week. Smith stated that when the date for repayment arrived, Harmon told him he had gambled the money away at a casino in an attempt to double it. Smith indicated he was sad that Harmon could not repay him on time but denied being upset with Harmon or arguing with him.

{¶ 4} Smith testified Harmon texted him on June 23, 2017, indicating he should come over to Harmon's apartment so Harmon could repay the loan. Harmon let Smith into the apartment and shut the door, then indicated he was getting his wallet and went to a coffee table in the living room. Smith testified he was looking at his phone and not paying attention when Harmon suddenly struck him in the abdomen. After Harmon struck him again, Smith realized Harmon was stabbing him. Harmon stabbed Smith multiple times in the shoulder, hands and arms, abdomen, and chest. Smith was standing near the door to the apartment when this occurred; he opened the door and tried to flee. Smith testified that when he was halfway out the door, Harmon put his body against the door and grabbed Smith's arm, trapping Smith's left side in the apartment and preventing him from leaving. Smith was ultimately able to force his way out of the apartment. Smith testified he dropped his phone in the apartment and lost his left shoe in the struggle. He fled the apartment and met a maintenance worker for the apartment complex, who helped him to the complex rental office. The maintenance worker and the office manager locked the doors to the rental office and called police. Smith claimed that while waiting for police to arrive, he saw Harmon drive away from the apartment complex.

{¶ 5} Smith testified he held a concealed-carry weapon permit and carried a gun in his waistband most of the time for protection. However, Smith stated he was not carrying his gun when he entered Harmon's apartment on June 23, 2017, asserting he did not feel the need to carry it and left it in his vehicle because he considered Harmon family. Smith claimed he did not threaten Harmon prior to the stabbing. Smith testified his injuries required major surgery, including removal of a portion of his colon.

{¶ 6} The maintenance worker who helped Smith to the apartment complex office and the apartment complex office manager both testified about the assistance they provided to Smith. Both testified they did not see any weapons on Smith while they were aiding him. Columbus Police Officer Adam Callender, who responded to the emergency call along with his partner, testified that Smith and the manager of the apartment complex met them near the leasing office. Smith had wounds to his hands and abdomen. Officer Callender testified he did not see any weapons on Smith. After Smith was transported for medical treatment, Officer Callender and his partner went to Harmon's apartment; no one was present and they secured the scene. Columbus Police Detective Lisa Swisher from the crime scene search unit testified that a box cutter was recovered from

Harmon's apartment. Smith's left sandal was also located in Harmon's apartment. At the close of the prosecution's presentation, Harmon's trial counsel moved for acquittal under Crim.R. 29. The trial court denied the motion.

{¶ 7} Harmon then testified on his own behalf. He stated he was friends with Smith, whom he knew through his brother. Harmon testified he and Smith lived in the same apartment complex and he had spent time at Smith's apartment. Harmon claimed he had seen Smith with a handgun and was aware Smith usually carried a handgun. Harmon also testified he had purchased marijuana from Smith on multiple occasions.

{¶ 8} Harmon stated that, approximately one month before the incident, Smith loaned him $200 in cash and gave him an ounce of marijuana to sell. Harmon stated Smith instructed him to sell the marijuana for $320 and give $200 of that profit back to Smith. Thus, Smith indicated Harmon owed him a total of $400. Harmon stated the loan was made on a Monday or Tuesday, and he was expected to repay Smith at the end of that week; however, Harmon admitted he was unable to repay Smith when expected because he had gambled away the money at a casino. Harmon testified that when he told Smith he would be unable to repay him on time, Smith became upset and told him a story about having previously been in a shootout with someone else who owed him money. Harmon stated he did not perceive this story to be a threat at the time, but later came to believe it was a threat. Harmon told Smith he would repay him within a few weeks.

{¶ 9} Harmon testified he texted Smith on June 23, 2017 to indicate he needed to speak with him. Smith did not reply to the text but arrived at Harmon's apartment approximately three hours later. Harmon testified he was surprised when Smith arrived because he had not responded to the text message. Harmon testified he was smoking marijuana and playing a video game when Smith arrived at his apartment. Harmon was wearing a hooded sweatshirt with a large front pocket, where his marijuana supplies, including a small knife, were located.

{¶ 10} After Smith entered the apartment, Harmon went to the coffee table to pause the video game. Harmon testified he told Smith he could not repay him because he had lost the money again. Harmon testified Smith became angry and began yelling, telling Harmon to get the money from relatives if necessary. Harmon testified that Smith reached toward a bulge at his waist, which Harmon believed was Smith's gun. Harmon stated he feared that

8

> Smith would shoot him. However, Harmon admitted he did not actually see a gun. Harmon testified that when Smith reached toward his waist, he rushed at him and grabbed him. Harmon pulled the knife out of his sweatshirt pocket and began swinging it at Smith. Harmon said he saw Smith opening the door, so he pushed Smith out of the apartment and locked the door. Harmon claimed he believed he was acting in self-defense. After Smith left the apartment, Harmon initially hid in the bathroom of the apartment in fear that Smith would shoot through the door. When several minutes passed without Smith returning, Harmon left the apartment and drove away from the complex in his car.

*State v. Harmon*, 2020-Ohio-590 (Ohio App. 10th Dist. Feb. 20, 2020). These findings of fact are binding on this Court unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). The rebuttal evidence must have been presented to the state courts prior to the decision being reviewed. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Harmon's Petition pleads three grounds for relief which were treated in order in the Report.

> **Ground One:** The verdicts were not supported by sufficient evidence. Mr. Harmon's protected rights of due process and equal protection were violated Fifth and Fourth Amendment. U.S.C. (sic).
>
> **Supporting Facts:** Harmon demonstrated by the preponderance of the evidence that his actions were made in self-defense. That is, he showed at trial that the victim arrived at Harmon's apartment unannounced and started threatening Harmon about not having the money owed. Harmon demonstrated that the victim is known to carry a gun on his person. The victim has a reputation as understood by Harmon to use a gun when people don't pay the money owed. Harmon witnessed the victim reach for what he believed to be a gun.
>
> Harmon used only the force which was necessary to repel the threat. The State convicted Harmon on insufficient evidence to sustain a conviction of attempted murder and repeat violent offender specification[4]. As self-defense negates a criminal conviction as it is a affirmative defense, yet the State denied Harmon the equal protection treatment of R.C. 2901.05

---

[4] The Report noted that Harmon had admitted to prior convictions for attempted involuntary manslaughter and attempted aggravated robbery sufficient to prove the repeat violent offender specification under Ohio Revised Code § 2929.01(CC)(Report, ECF No. 8, PageID 746, n.2).

> **Ground Two:** Ineffective assistance of counsel. Mr. Harmon's Sixth Amendment right to have the assistance of counsel for his defense was violated.
>
> **Supporting Facts:** Counsel was ineffective because he could not have been paying attention throughout the whole testimony of Lavandon Smith.
>
> Bryan Potts, defense counsel let the witness mention Mr. Harmon's prior incarceration five consecutive times before Richard Schanz, the prosecutor stopped it. No competent attorney would have needed the prosecutor to slow the things down so he could remember to object. We know it is legitimate trial strategy not to draw more attention to testimony with a curative instruction, but it cannot be believed that this was strategic. The court asked counsel, "Do you want me to tell the jury that we're specifically striking that (any reference to prison) and that they are to disregard it." Mr. Potts stated yes. At this point the mentioning of jail is still allowed. The court, not Mr. Potts offered to strike the entire answer, counsel agreed in an attempt to cure the potential error.
>
> **Ground Three:** Trial court committed plain error when it did not *sua sponte* declare a mistrial after a witness repeatedly mentioned Mr. Harmon's criminal record. Violated Fifth and Sixth Amendment.

(Petition, ECF No. 1, PageID 5-7).

**Ground One:  Insufficient Evidence to Convict**

In his First Ground for Relief, Harmon asserts he was convicted on constitutionally insufficient evidence because he believes he proved, by a preponderance of the evidence, that he acted in self-defense, thus preventing a conviction for attempted murder.

The Report notes that Harmon's sufficiency of the evidence claim on direct appeal referred only to the kidnapping conviction. *State v. Harmon, supra,* at ¶¶'s 29-33. Harmon presented his self-defense argument to the Tenth District only as a claim that his attempted murder conviction

was against the manifest weight of the evidence. Distinguishing the standards for manifest weight and insufficiency of the evidence claims, the Report recommended that Harmon's insufficiency claim be dismissed as procedurally defaulted for lack of fair presentation to the appellate court (Report, ECF No. 8, PageID 748).

In his Objections, Harmon admits that a "manifest weight" claim is purely a state law issue and that analyzing his First Ground for Relief under that standard would lead to the conclusion that the First Ground was procedurally defaulted (Objections, ECF No. 13, PageID 771). However, he asserts, the Magistrate Judge should have analyzed the First Ground under the sufficiency of evidence standard because an insufficiency of the evidence claim is "implicit" in a manifest weight claim. *Id.*

As precedent, he cites *Arnold v. Warden, Lebanon Corr. Inst.,* 832 F. Supp. 2d 853 (S.D. Ohio 2011)(Black, D.J., adopting Report and Recommendations of Newman, M.J.). In that case, as here, the petitioner had raised a manifest weight claim in the state court of appeals and an insufficiency claim in habeas. In that case, as here, the State asserted the insufficiency claim was procedurally defaulted by presenting only a manifest weight claim. Judge Newman did not decide that question. He noted that a decision by a state court of appeals that the verdict was not against the manifest weight of the evidence "implicitly holds that there was sufficient evidence for the verdict." 832 F. Supp. 2d at 861, citing *Nash v. Eberlin,* 258 Fed.Appx. 761, 764–65 (6th Cir.2007), and *Bell v. Warden, Warren Corr. Inst.,* 2011 U.S. Dist. LEXIS 76320, at *18–19 (S.D. Ohio June 22, 2011) (Black, J.; Merz, M.J.). *Arnold* is not contrary to the Report here because Judge Newman elided the procedural default question.

However, the undersigned has previously decided that pleading a manifest weight claim in state court is sufficient to preserve an insufficiency claim for consideration in habeas. *Hughes v.*

*Warden*, 2011 WL 1980037, 2011 U.S. Dist. LEXIS 54131(S.D. Ohio Apr. 27, 2011)(Merz, M.J.), adopted, 2011 WL 1979667, 2011 U.S. Dist. LEXIS 54132 (S.D. Ohio May 20, 2011)(Dlott, D.J.). On the basis of *Hughes*, the Report's recommendation of a conclusion that Ground One is procedurally defaulted (ECF No. 8, PageID 748) is withdrawn.

In the alternative, the Report recommended the insufficiency claim be denied on the merits (Report, ECF No. 8, PageID 748-51, relying on *Nash* and *Hughes, supra)*.  To the same effect may now be added *Arnold, supra*.  Harmon's Objections take no note of this alternative recommendation on the merits.  Instead, Harmon argues that if the Court analyzed the merits, it would conclude the State failed to prove he acted with the required *mens rea* because the State failed to disprove that he acted in self-defense (Objections, ECF No. 13, PageID 772).

In support, Petitioner quotes at length from *Engle v. Isaac*, 456 U.S. 107 (1982)[5].  Harmon cites *Engle* as standing for the proposition that once a defendant raises a self-defense claim, the burden of proof shifts to the State to disprove that defense.  In fact, the Court in *Engle* rejected that proposition and held that any constitutional claim based on burden of proof of self-defense had to be raised in the state courts or be forfeited under *Wainwright v. Sykes*, 433 U.S. 72 (1977).  As Justice O'Connor recognized in *Engle*, Ohio has frequently changed the contours of self-defense doctrine and indeed in enacting the new criminal code in 1974, expressly made self-defense an affirmative defense on which the defendant had the burden of proof by a preponderance of the evidence.  Ohio Revised Code § 2901.05.  Placing that burden on the defendant was expressly held to be constitutional in *Martin v. Ohio*, 480 U.S. 228 (1987).

The Tenth District Court of Appeals in this case described the parameters of self-defense

---

[5] In the quoted portion of the opinion, Justice O'Connor frequently refers to "Respondents."  In that case, respondents were the state prisoners who were defending the decision of the Sixth Circuit which was on appeal to the Supreme Court.

at the time of trial as follows:

> {¶ 36} Harmon argues the jury's verdicts were against the manifest weight of the evidence because he established he acted in self-defense. Under the law at the relevant time, self-defense is an affirmative defense that requires an accused to prove by a preponderance of the evidence that: (1) he was not at fault in creating the situation that gave rise to the altercation, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was the use of force, and (3) he did not violate any duty to retreat or avoid the danger. *State v. Reynolds*, 10th Dist. No. 18AP-560, 2019-Ohio-2343, ¶ 34. These elements are cumulative and if an accused fails to prove any one of the elements by a preponderance of the evidence, he fails to demonstrate that he acted in self-defense. *Id.* Harmon argues his testimony established all of these elements by a preponderance of the evidence and the jury lost its way in finding him guilty of the charges against him.

*State v. Harmon, supra.*

Applying those elements to this case, the Tenth District concluded:

> ¶ 37} With respect to the third element of self-defense, the evidence was undisputed that the altercation occurred in Harmon's apartment. There is no duty to retreat from one's own home before using force in self-defense. *State v. Shine-Johnson*, 10th Dist. No. 17AP-194, 2018-Ohio-3347, ¶ 11. However, with respect to the other two elements of self-defense, we conclude the jury could reasonably have concluded Harmon failed to establish he was not at fault in creating the situation or had a bona fide belief that he was in imminent danger of death or great bodily harm and could only escape through use of force. Harmon argues he was not at fault for creating the situation giving rise to the altercation, asserting that Smith's history of carrying a handgun and making threatening statements led to the altercation. However, Smith denied threatening Harmon and testified Harmon attacked him shortly after he entered the apartment, while Smith was looking down at his phone. Likewise, although Harmon argues he legitimately believed Smith was carrying a gun and charged Smith as he was reaching for it, he admitted at trial that he did not actually see a gun on Smith at the time of the incident. Smith testified he was not carrying his gun when he entered Harmon's apartment on June 23, 2017. The two apartment complex employees who aided Smith after the incident and Officer Callender who responded to the emergency call all

> testified they did not see any weapons on Smith. The jury was in the best position to determine the credibility of Harmon, Smith, and the other witnesses, and was free to believe or disbelieve any or all of the testimony relating to these issues. *Reynolds* at ¶ 36. Based on the record before us, we cannot conclude the jury clearly lost its way in rejecting Harmon's self-defense claim and concluding he was guilty of the charges against him.

*Id.* In sum the appellate court decided that, although Harmon had satisfied the no-duty-to-retreat element and had produced some evidence on the other two elements, there was sufficient evidence to the contrary that the jury could reasonably have believed the victim.

Harmon disputes this finding, asserting the jury was not free to accept "contradictory evidence as more truthful than Petitioner's uncontradictory [sic] evidence." Of course, no one could directly contradict Harmon's statement that he believed Smith had a gun because that belief was inside Harmon's head, i.e. subjective. But Smith testified he was not carrying a gun, Harmon admitted he saw no gun, and three disinterested witnesses saw no gun on Smith immediately after he was stabbed. The jury was also free to believe Smith's testimony that he did not threaten Harmon and that he was stabbed shortly after entering the apartment.

Harmon cites authority for weighing a victim's reputation for violence (Objections, ECF No. 13, PageID 776). But Harmon cites only his own testimony of that reputation, testimony that was self-serving and uncorroborated and which the jury was therefore free to disbelieve.

Harmon objects that the victim's testimony was so inconsistent "that it cannot serve as sufficient evidence to prove by a preponderance of the evidence that the Petitioner acted with the culpable *mens rea*." The required *mens rea* for attempted murder is that the defendant acted purposely. Ohio Revised Code § 2903.02(A). When a person pleads self-defense, he or she admits that they acted purposely, that they intended to use deadly force to repel what they perceived as an imminent threat of death from the other. Logically, the State could not rely on the victim to prove

14

*mens rea* unless the defendant declared his intention to kill when striking, which is not what happened here.  Because *mens rea* is an element of the offense of attempted murder, the State had to prove it beyond a reasonable doubt, but the State offered sufficient evidence from which the jury could have properly inferred *mens rea* and Harmon added to that by his own testimony, i.e., he did not claim that he stabbed Smith accidentally.

The Tenth District concluded Harmon had not shown the jury "lost its way" and rendered a verdict against the manifest weight of the evidence.  As the authority cited by Harmon holds, that is implicitly a holding that there was sufficient evidence on which the jury could conclude Harmon had not proved two necessary elements of self-defense by a preponderance of the evidence.  That conclusion of the Tenth District is entitled to deference under 28 U.S.C. § 2254(d)(2) because Harmon has not overcome it with clear and convincing evidence.  28 U.S.C. 2254(e)(1).  Harmon's First Ground for Relief should therefore be rejected on the merits and he is not entitled to an amendment of the judgment on that basis.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Harmon claims his trial attorney was ineffective for failing to prevent mention of his prior incarceration.  The Report noted that the Tenth District had decided this claim, reasonably applying the relevant federal standard found in *Strickland v. Washington,* 466 U.S. 668 (1984).  On that basis, the Report recommended deference to the Tenth District's decision under 28 U.S.C. § 2254(d)(1)(Report, ECF No. 8, PageID 756-57).

Harmon objects that if it had not been for the prosecutor and the judge, his defense counsel would never have objected (ECF No. 13, PageID 778).  This is directly contrary to the finding of

15

the Tenth District, binding on this Court, that defense counsel objected and obtained a curative instruction each time the mention of prior conviction occurred. *State v. Harmon, supra*, ¶ 23. That makes all the more defensible counsel's decision not to ask for an additional curative instruction as part of the final jury instructions; such an instruction can easily call to mind precisely the thing a defendant wants them not to notice.

**Ground Three: Failure of the Trial Court to Declare a Mistrial *Sua Sponte***

In his Third Ground for Relief, Harmon claims the trial judge violated his rights under the Fifth and Sixth Amendments when he did not *sua sponte* declare a mistrial after mention of Harmon's criminal record. The Report recommended dismissal of this Ground on the merits because the Supreme Court has never held reference to prior convictions is unconstitutional (Report, ECF No. 8, PageID 759, citing *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003)).

Harmon's objection makes no reference to case law, but merely claims in summary fashion that Smith's mention of Harmon's prior conviction "clearly was the defining factor in this case." (ECF No. 13, PageID 778). This argument completely ignores the fact that Harmon had to take the witness stand in order to testify to the facts supporting his self-defense defense and revelation of his prior felony convictions on cross-examination was inevitable.

Although the Report did not recommend it, this Third Ground is also procedurally defaulted. Because Harmon was claiming the mistrial should have been declared *sua sponte*, i.e., without a motion from defense, the Tenth District reviewed only for plain error (Harmon, supra, ¶ 17). Plain error review is an enforcement of an underlying default, and not a waiver of it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517,

16

525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Because Harmon's Third Ground for Relief is both procedurally defaulted and without merit, his Objections on this Ground should be overruled.

**Conclusion**

In sum, Petitioner suffered no procedural manifest injustice in the Court's entering judgment without considering his untimely Objections. When the Court, in the alternative, considers the Objections on their merits, they are unpersuasive. Accordingly the Magistrate Judge respectfully recommends that Petitioner's Motion to Alter or Amend the Judgment under Fed.R.Civ.P. 59(e) be DENIED. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

December 1, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such

17

objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.