UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TONY L. HARMON,

    Petitioner,

    v.

WARDEN,

    Lebanon Correctional Institution,

    Respondent.

Case No. 2:21-cv-2745

Judge Michael H. Watson

Magistrate Judge Merz

## OPINION AND ORDER

This habeas corpus case is before the Court on Petitioner's Objections, ECF No. 19, to the Magistrate Judge's Report and Recommendations ("R&R"), ECF No. 18, recommending denial of Petitioner's Motion to Alter or Amend the Judgment in this case under Federal Rule of Civil Procedure 59(e), ECF No. 17. A litigant who objects to a Magistrate Judge's R&R is entitled to *de novo* review of any portion of the R&R to which substantial objection is made. The Court has conducted that *de novo* review and embodies its conclusions in this Opinion and Order.

**I. Petitioner's Objections to the Magistrate Judge's Report on the Merits**

On September 8, 2021, the Magistrate Judge recommended the Petition in this case be dismissed. R&R, ECF No. 8 (hereinafter, "First Report"). Objections to the First Report were due by September 27, 2021.[1] On September 24, 2021,

---

[1] Fourteen days for objections are allowed by Federal Rule of Civil Procedure 72(b).

the Court received and granted a motion for extension of time until October 10, 2021, to file objections. ECF Nos. 9, 10. The Court had received neither objections nor a request for a further extension by October 19, 2021, and on that date adopted the First Report and dismissed the case. ECF Nos. 11, 12. On November 1, 2021, the Clerk received and docketed Petitioner's Objections. Significantly, the Objections contain neither a certificate of service nor a declaration on when they were deposited in the prison mail.

Because the Objections were untimely and filed after judgment, the Magistrate Judge struck them but offered Petitioner the available legal option of filing a motion to amend the judgment under Federal Rule of Civil Procedure 59(e). ECF No. 14. The instant Motion to Amend was then timely filed.

## II. Claim of Procedural Injustice

In his Motion to Amend, Harmon claims he received "procedural injustice" because the Magistrate Judge struck his Objections on the merits to the First Report and then refused to consider them despite Harmon's explanations about their timeliness. Mot. Amend, ECF No. 17. Without agreeing with Petitioner that he had been treated unjustly, the Magistrate Judge reviewed the merits of the Objections to the First Report and included that analysis in his R&R now before the Court. ECF No. 18 (hereinafter, "Second Report"). Because the Magistrate Judge did consider the Objections on the merits to the First Report, ECF No. 18,

---

Federal Rule of Civil Procedure 6 allows an additional three days after service by mail, which is the way the First Report was served.

PAGEID ## 801–12, and the Court is now prepared to review those Objections, Harmon's "procedural injustice" claim is moot.

## III. Substantive Claims

Harmon pleaded three grounds for relief in his Petition: Insufficient Evidence to Convict (Ground One); Ineffective Assistance of Trial Counsel (Ground Two); and Failure of the Trial Court to *sua sponte* Declare a Mistrial (Ground Three). Petition, ECF No. 1, PAGEID ## 5–7. The First Report recommended that all three of these claims be rejected on the merits. ECF No. 8, PAGEID ## 746–59. The Objections on the merits address all three grounds but discuss Grounds Two and Three in summary fashion. ECF No. 13. The Motion to Amend addressed only Petitioner's "procedural injustice" claim. ECF No. 17. Petitioner's Objections to the Second Report address only the Insufficient Evidence claim. ECF 19, PAGEID ## 818–21.

Harmon's principal focus in his Objections to both the First and Second Reports is on his insufficient evidence claim. In the Petition, he pleaded that claim as follows:

> **Ground One:** The verdicts were not supported by sufficient evidence. Mr. Harmon's protected rights of due process and equal protection were violated Fifth and Fourth Amendment. U.S.C. (sic).
>
> **Supporting Facts:** Harmon demonstrated by the preponderance of the evidence that his actions were made in self-defense. That is, he showed at trial that the victim arrived at Harmon's apartment unannounced and started threatening Harmon about not having the money owed. Harmon demonstrated that the victim is known to

> carry a gun on his person. The victim has a reputation as understood by Harmon to use a gun when people don't pay the money owed. Harmon witnessed the victim reach for what he believed to be a gun. Harmon used only the force which was necessary to repel the threat. The State convicted Harmon on insufficient evidence to sustain a conviction of attempted murder and repeat violent offender specification. As self-defense negates a criminal conviction as it is a affirmative defense, yet the State denied Harmon the equal protection treatment of R.C. 2901.05.

Petition, ECF No. 1, PAGEID # 5.

The Ohio Tenth District Court of Appeals summarized the trial testimony as follows:

> {¶ 2} Harmon was indicted in September 2017 on charges of attempted murder, felonious assault, and kidnapping, with a repeat violent offender specification on each charge. The charges arose from an incident that occurred at Harmon's apartment on June 23, 2017, between Harmon and Lavandon A. Smith. A jury trial was conducted on the charges in September 2018.
>
> {¶ 3} At trial, Smith testified he knew Harmon through Harmon's brother, whom Smith had been friends with since childhood. Smith would occasionally socialize with Harmon, hanging out, playing video games, and going to bars together. A month or two prior to the incident, Smith loaned $400 to Harmon so he could pay rent. On cross-examination, Smith denied selling drugs and denied giving Harmon drugs to sell as part of the loan. Smith testified he loaned the money to Harmon on a Tuesday and expected to be repaid on Friday of the same week. Smith stated that when the date for repayment arrived, Harmon told him he had gambled the money away at a casino in an attempt to double it. Smith indicated he was sad that Harmon could not repay him on time but denied being upset with Harmon or arguing with him.

{¶ 4} Smith testified Harmon texted him on June 23, 2017, indicating he should come over to Harmon's apartment so Harmon could repay the loan. Harmon let Smith into the apartment and shut the door, then indicated he was getting his wallet and went to a coffee table in the living room. Smith testified he was looking at his phone and not paying attention when Harmon suddenly struck him in the abdomen. After Harmon struck him again, Smith realized Harmon was stabbing him. Harmon stabbed Smith multiple times in the shoulder, hands and arms, abdomen, and chest. Smith was standing near the door to the apartment when this occurred; he opened the door and tried to flee. Smith testified that when he was halfway out the door, Harmon put his body against the door and grabbed Smith's arm, trapping Smith's left side in the apartment and preventing him from leaving. Smith was ultimately able to force his way out of the apartment. Smith testified he dropped his phone in the apartment and lost his left shoe in the struggle. He fled the apartment and met a maintenance worker for the apartment complex, who helped him to the complex rental office. The maintenance worker and the office manager locked the doors to the rental office and called police. Smith claimed that while waiting for police to arrive, he saw Harmon drive away from the apartment complex.

{¶ 5} Smith testified he held a concealed-carry weapon permit and carried a gun in his waistband most of the time for protection. However, Smith stated he was not carrying his gun when he entered Harmon's apartment on June 23, 2017, asserting he did not feel the need to carry it and left it in his vehicle because he considered Harmon family. Smith claimed he did not threaten Harmon prior to the stabbing. Smith testified his injuries required major surgery, including removal of a portion of his colon.

{¶ 6} The maintenance worker who helped Smith to the apartment complex office and the apartment complex office manager both testified about the assistance they provided to Smith. Both testified they did not see any weapons on Smith while they were aiding him. Columbus Police Officer Adam Callender, who responded to the

emergency call along with his partner, testified that Smith and the manager of the apartment complex met them near the leasing office. Smith had wounds to his hands and abdomen. Officer Callender testified he did not see any weapons on Smith. After Smith was transported for medical treatment, Officer Callender and his partner went to Harmon's apartment; no one was present and they secured the scene. Columbus Police Detective Lisa Swisher from the crime scene search unit testified that a box cutter was recovered from Harmon's apartment. Smith's left sandal was also located in Harmon's apartment. At the close of the prosecution's presentation, Harmon's trial counsel moved for acquittal under Crim.R. 29. The trial court denied the motion.

{¶ 7} Harmon then testified on his own behalf. He stated he was friends with Smith, whom he knew through his brother. Harmon testified he and Smith lived in the same apartment complex and he had spent time at Smith's apartment. Harmon claimed he had seen Smith with a handgun and was aware Smith usually carried a handgun. Harmon also testified he had purchased marijuana from Smith on multiple occasions.

{¶ 8} Harmon stated that, approximately one month before the incident, Smith loaned him $200 in cash and gave him an ounce of marijuana to sell. Harmon stated Smith instructed him to sell the marijuana for $320 and give $200 of that profit back to Smith. Thus, Smith indicated Harmon owed him a total of $400. Harmon stated the loan was made on a Monday or Tuesday, and he was expected to repay Smith at the end of that week; however, Harmon admitted he was unable to repay Smith when expected because he had gambled away the money at a casino. Harmon testified that when he told Smith he would be unable to repay him on time, Smith became upset and told him a story about having previously been in a shootout with someone else who owed him money. Harmon stated he did not perceive this story to be a threat at the time, but later came to believe it was a threat. Harmon told Smith he would repay him within a few weeks.

> {¶ 9} Harmon testified he texted Smith on June 23, 2017 to indicate he needed to speak with him. Smith did not reply to the text but arrived at Harmon's apartment approximately three hours later. Harmon testified he was surprised when Smith arrived because he had not responded to the text message. Harmon testified he was smoking marijuana and playing a video game when Smith arrived at his apartment. Harmon was wearing a hooded sweatshirt with a large front pocket, where his marijuana supplies, including a small knife, were located.
>
> {¶ 10} After Smith entered the apartment, Harmon went to the coffee table to pause the video game. Harmon testified he told Smith he could not repay him because he had lost the money again. Harmon testified Smith became angry and began yelling, telling Harmon to get the money from relatives if necessary. Harmon testified that Smith reached toward a bulge at his waist, which Harmon believed was Smith's gun. Harmon stated he feared that Smith would shoot him. However, Harmon admitted he did not actually see a gun. Harmon testified that when Smith reached toward his waist, he rushed at him and grabbed him. Harmon pulled the knife out of his sweatshirt pocket and began swinging it at Smith. Harmon said he saw Smith opening the door, so he pushed Smith out of the apartment and locked the door. Harmon claimed he believed he was acting in self-defense. After Smith left the apartment, Harmon initially hid in the bathroom of the apartment in fear that Smith would shoot through the door. When several minutes passed without Smith returning, Harmon left the apartment and drove away from the complex in his car.

*State v. Harmon*, 2020-Ohio-590 (Ohio App. 10th Dist. Feb. 20, 2020). As the Magistrate Judge noted in the Second Report, these findings of fact are binding on this Court unless rebutted by clear and convincing evidence. ECF No. 18, PAGEID # 804 (citing 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998)). Harmon has not attempted to rebut these findings, much less

succeeded in doing so by clear and convincing evidence.

As the First Report analyzed Ground One, it is not really a claim that there was insufficient evidence on the elements of the crime of attempted murder. Rather, the Magistrate Judge read the First Ground for Relief as claiming that "Harmon believes he proved, by a preponderance of the evidence, that he acted in self-defense, thus preventing a conviction for attempted murder." ECF No. 8, PAGEID # 746. Harmon has never disagreed with this reading and indeed reinforces it in the objections he has made. In his Objections to the First Report, he argues "the State did not prove Petitioner acted with the specific *mens rea* to be culpable of the crime charged. Nor can they. Petitioner acted out of self-defense. The State failed to disprove that Petitioner acted with self-defense." ECF No. 13, PAGEID # 772.

This misstates the State's burden. Because self-defense is an affirmative defense under Ohio law, the burden of proof was on Harmon to prove self-defense, not on the State to disprove it.

Harmon claims he "proved all elements of self-defense which are set forth in *State v. Cassano,* 96 Ohio St. 3d 94 (2002)." He cites ¶ 72 of that decision which reads:

> [**P72] As we recently recognized in *State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240, "To establish self-defense, a defendant must prove * * * (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such

> danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." *Id.*, 94 Ohio St.3d at 24, 759 N.E.2d 1240, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus.

This is the same definition of self-defense on which the Tenth District relied in this case:

> Under the law at the relevant time, self-defense is an affirmative defense that requires an accused to prove by a preponderance of the evidence that: (1) he was not at fault in creating the situation that gave rise to the altercation, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was the use of force, and (3) he did not violate any duty to retreat or avoid the danger. *State v. Reynolds,* 10th Dist. No. 18AP-560, 2019-Ohio-2343, ¶ 34. These elements are cumulative and if an accused fails to prove any one of the elements by a preponderance of the evidence, he fails to demonstrate that he acted in self-defense. *Id*. Harmon argues his testimony established all of these elements by a preponderance of the evidence and the jury lost its way in finding him guilty of the charges against him.

*State v. Harmon, supra,* at ¶ 36.

In applying that definition, the Tenth District found Harmon was under no duty to retreat because he was in his own home.

> However, with respect to the other two elements of self-defense, we conclude the jury could reasonably have concluded Harmon failed to establish he was not at fault in creating the situation or had a bona fide belief that he was in imminent danger of death or great bodily harm and could only escape through use of force. Harmon argues he was not at fault for creating the situation giving rise to the altercation, asserting that Smith's history of carrying a handgun and making threatening statements led to the altercation. However, Smith denied threatening Harmon

>and testified Harmon attacked him shortly after he entered the apartment, while Smith was looking down at his phone. Likewise, although Harmon argues he legitimately believed Smith was carrying a gun and charged Smith as he was reaching for it, he admitted at trial that he did not actually see a gun on Smith at the time of the incident. Smith testified he was not carrying his gun when he entered Harmon's apartment on June 23, 2017. The two apartment complex employees who aided Smith after the incident and Officer Callender who responded to the emergency call all testified they did not see any weapons on Smith. The jury was in the best position to determine the credibility of Harmon, Smith, and the other witnesses, and was free to believe or disbelieve any or all of the testimony relating to these issues. *Reynolds* at ¶ 36. Based on the record before us, we cannot conclude the jury clearly lost its way in rejecting Harmon's self-defense claim and concluding he was guilty of the charges against him.

*Id.* at ¶ 37. Harmon seems to believe that because he presented some evidence—his own testimony—on the second two elements of self-defense that the jury was required to believe him. But that it not the law. As the Tenth District pointed out, questions of the credibility of witnesses are for the jury to decide. Here, the jury was free to choose between two conflicting testimonies by the only two eyewitnesses. It was not obliged to believe Harmon simply because he pleaded self-defense and presented some evidence in favor of that defense. As the Ohio Supreme Court held in *Cassano*, the burden of proof—of persuading the jury of the truth of the defendant's side of the case——is what is meant by making self-defense an affirmative defense. The Supreme Court has found that placement of the burden of proof is constitutional. *Martin v. Ohio*, 480 U.S. 228 (1987).

Because Harmon failed to persuade the jury on two elements of self-defense

on which he bore the burden of proof, his First Ground for Relief is without merit, and his objections as to the First Report on that ground are overruled.

As to Ground Two, the Tenth District Court of Appeals expressly found that defense counsel's manner of dealing with inappropriate mentions of Harmon's prior convictions (objections on each occasion) was not deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984). The Magistrate Judge concluded this was not an objectively unreasonable application of *Strickland* and therefore was entitled to deference under 28 U.S.C. § 2254(d)(1). The Objections to the First Report merely assert in summary fashion that the judge and prosecutor assisted defense counsel in dealing with this error. ECF No. 13, PAGEID # 778. The objection merely quibbles with a finding of fact made by the Tenth District (whose factual findings are binding on this Court) and cites no law suggesting the Tenth District's decision was an unreasonable application of *Strickland*. Petitioner's objection on Ground Two is overruled.

In Ground Three, Harmon asserts the trial judge should have declared a mistrial *sua sponte* because his prior convictions were mentioned before the jury. The First Report rejected this claim because the Tenth District's rejection of it was neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent. ECF No. 8, PAGEID # 757 (relying on *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003)). The Objections to the First Report do not deal with that point at all. Instead, they insist that reference to the prior convictions was "prejudicial." ECF No. 13, PAGEID ## 778–79. The Court

agrees that mention of the prior convictions probably was harmful to Harmon's case. That is why prior convictions are usually not admissible. But the Supreme Court has never made their admission unconstitutional, and they would have come out anyway on cross-examination of Harmon who had to take the stand to attempt to establish self-defense. Harmon's objection on Ground Three is overruled.

## IV. Conclusion

Having reviewed *de novo* the Magistrate Judge's R&R on the Motion to Amend, the Court finds Harmon's objections are without merit, and they are overruled. The Second Report is adopted, and the Motion to Amend is denied.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**